UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT TAYLOR BLUHM,

                Petitioner,                    Case No. 1:20-cv-215

v.                                       Honorable Janet T. Neff

RANDEE REWERTS,

                Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.      Factual allegations

Petitioner Robert Taylor Bluhm is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  Petitioner pleaded guilty in the Allegan County Circuit Court to third-degree criminal sexual conduct (CSC III), in violation of Mich. Comp. Laws § 750.520d(1)(b), in exchange for the dismissal of two other charges:  assault with intent to commit sexual penetration, Mich. Comp. Laws § 750.520g(1); and assault to do great bodily harm less than murder, Mich. Comp. Laws § 750.84.  The plea also provided for the dismissal of the third-habitual-offender enhancement, Mich. Comp. Laws § 769.11.  (*See* Mar. 14, 2016, Allegan Cty. Cir. Ct. Order, ECF No. 1-1, PageID.57.)  On March 7, 2016, the court sentenced Petitioner to a prison term of 93 to 180 months on the CSC-III conviction.

Petitioner, who is represented by counsel, filed his habeas corpus petition on March 11, 2020.  The petition raises four grounds for relief, as follows:

I.      [Petitioner] did not commit rape and is innocent.

II.     [Petitioner] had [in]effective assistance of counsel.

III.    [Petitioner's] plea was not voluntary or intelligent.

IV.     [Petitioner] was denied important evidence under the Brady rule.

(Pet., ECF No. 1, PageID.6, 8, 9, 11, 25, 26, 28.)

Petitioner's conviction arose from the events of September 28, 2015.  According to Petitioner's factual statement in support of his petition, the victim, Ms. Wood, and another man, Mr. Thompson, agreed to meet for a date after becoming acquainted online.  Wood and Thompson decided to meet at Petitioner's house, where they arrived at about 9:00 or 10:00 p.m.  All three allegedly began to party, smoking marijuana and drinking beer and alcohol late into the night.

Near midnight, Wood and Thompson went to the party store to buy more cigarettes and beer. Petitioner stayed home, apparently calling friends, though he complains that he was unable to confirm this until much later, because his family did not receive his phone back from the police until a year after sentencing. (Compl., ECF No. 1, PageID.21.)

According to Petitioner, at approximately 2:00 or 3:00 a.m., the three ran out of marijuana and decided to go to the home of one of Petitioner's friends. Petitioner drove, and Thompson and Wood sat in the back seat, having digital sex and kissing. At the friend's house, the group learned that the friend had no marijuana to sell. Wood, allegedly because of her drunkenness, became angry and critical of the friend's treatment of his dog. According to Petitioner, Thompson then slapped Wood and, when she ran away, hit her with a piece of wood.

The three eventually calmed down and went back to the house. Petitioner and Wood went to the bedroom, where he performed oral sex on Wood. Wood then got her keys and left. A short time later, Wood was involved in a serious car accident, and she called 911. Petitioner claims that, when she got to the hospital, the victim stated that Petitioner had raped her and struck her with a 2x4, a claim Petitioner contends is wholly fabricated. (*Id.*, PageID.21-22.)[1]

---

[1] Petitioner's version of events is not consistent with the documents attached to his petition, which include a variety of descriptions of the evening's events. Petitioner claims that Wood reported to hospital personnel that Petitioner had raped her and hit her with a 2x4. However, the only reference to "2x4" in the attached hospital record is to the nature of the bruising on the victim's face, neck, and back. (Hosp. Rep., ECF No. 1-1, PageID.70.) All other references to the victim's claims indicate that the victim reported that "she was physically and sexually assaulted" (*id.*, PageID.73); that she "met a guy at a party and he raped her and physically hurt her" (*id.*); that "late last night and into the early morning she was sexually assaulted and physically abused until she was able to escape this am" (EMT Rep., PageID.78); and that "she was punched in the head and face" (*id.*).

Moreover, according to the attached police reports, Wood stated that Petitioner drove her to a fifth-wheel camper ("grandpa's house"). She rode in the back seat with Thompson. Thompson pushed her head down into the seat so that she could not see. Wood denied engaging in any sexual conduct with Thompson in the car. At grandpa's house, Wood attempted to get her keys from Petitioner, but Petitioner struck her in the face several times with his fist and forced her onto the bed, where he performed digital and oral sex on her. The victim reported that Thompson also hit her and pushed her down inside the camper and assaulted her. Petitioner drove them back to his house, but she did not recall the ride. She remembered waking up on Petitioner's couch when he forced her into the bedroom, where another sexual act occurred. When Petitioner went to brush his teeth, she found her keys and cell phone in a small drawer next to the kitchen. She fled in her car, flashing her lights to encourage someone to stop. (Police Rep. Supp., ECF No. 1-1, PageID.89-90.) In addition, according to Mr. Thompson's plea hearing transcript, which Petitioner has

At a plea hearing held on January 6, 2016, the prosecutor bench-filed an amended information, which changed Count II, the CSC-III count, from a 2-year misdemeanor to a 15-year felony and gave notice that the charge was a Tier III offense under the Sex Offender Registration Act (SORA), Mich. Comp. Laws § 28.7222(w)(iv).  (Am. Felony Information, ECF No. 1-1, PageID.74.)  The prosecutor indicated that, under the plea agreement, Petitioner would plead to the amended CSC-III charge, in exchange for the dismissal of the other two charges and the habitual-offender enhancement.  (Plea Tr., ECF No. 1-1, PageID.48.)  Petitioner, under oath, pleaded guilty to the amended CSC-III charge.  (*Id.,* PageID.50-52.)  On March 7, 2016, the court sentenced Petitioner within the minimum sentencing guidelines of 87 to 145 months, to a prison term of 93 months to 15 years.  (Sentencing Tr., ECF No. 1, PageID.40, 42.)

Petitioner, through appellate counsel, filed a motion to correct the invalid sentence, in which he challenged the scoring of Offense Variable (OV) 3, certain aspects of the presentence report, and the amount of restitution.  The trial court granted the motion as to the reduction in the amount of restitution, but denied the motion in all other respects on August 3, 2017.  (Aug. 3, 2017, Allegan Cty. Cir. Ct. Order, ECF No. 1-1, PageID.79-80.)

Petitioner then filed an application for leave to appeal to the Michigan Court of Appeals. Petitioner raised two issues:  (1) his restitution was calculated incorrectly; and (2) the

---

attached, Thompson admitted to pushing the victim with excessive force into a wall while Petitioner was attacking the victim.  (Thompson Plea Tr., ECF No. 1-1, PageID.102-105.)

Finally, as previously discussed, Petitioner was charged with two additional offenses that were dismissed in exchange for his plea:  assault with intent to commit sexual penetration, and assault with intent to do great bodily harm less than murder.  Those charges indicate that the prosecution had evidence that Petitioner used violence on the victim.  In addition, at the sentencing hearing, the victim objected to Petitioner's minimization of his responsibility, and the court stated that the victim had been treated "very violently" and that she had a concussion from being hit in the head, which had caused her to drive her car into the ditch as she escaped.  (Sentencing Tr., ECF No. 1, PageID.38-42.)  While Petitioner was not convicted of the assault offenses, because they were dismissed as part of his plea agreement, the Court notes that the story contained in Petitioner's brief is significantly different from the story that emerges from the attachments to the brief.

scoring of OV 3 was wrong.  The court of appeals denied leave to appeal on October 1, 2017, for lack of merit in the grounds presented.

Having obtained new counsel, Petitioner sought leave to appeal to the Michigan Supreme Court, raising entirely new issues—the four issues he presents in his habeas petition.  The supreme court denied leave to appeal on May 1, 2018.

Petitioner, with the assistance of the same attorney, filed a habeas petition in this Court on August 1, 2019, presenting the four grounds for relief identified in the instant case.  *Bluhm v. Rewerts*, No. 1:19-cv-625 (W.D. Mich.).  In an opinion, order, and judgment issued on August 22, 2019, this Court dismissed the petition without prejudice, because Petitioner had failed to exhaust his available state-court remedies with respect to the issues raised in the petition.  *Id.* (ECF Nos. 3-5).

On November 30, 2018, Petitioner, through the same attorney, filed a motion for relief from judgment in the Allegan County Circuit Court, presenting the four issues raised in his habeas application.  In an order issued on March 11, 2019, the trial court construed the motion as one seeking relief from judgment and denied the motion without a hearing.  The court determined that the issues related to his plea and the alleged ineffective assistance of counsel had been raised or should have been raised in his prior appeal and that Petitioner had failed to establish an exception under Michigan Court Rule 6.508(D).  The court rejected Petitioner's claimed *Brady* violation on the merits.  (Mar. 11, 2019, Allegan Cty. Ct. Order, ECF No. 1-1, PageID.126-127.)

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, raising the same four issues.  In an order issued on March 3, 2020, the court of appeals denied leave to appeal, because Petitioner had failed to establish that the trial court had erred in

denying the motion for relief from judgment.  Petitioner has not filed an application for leave to appeal to the Michigan Supreme Court.

## II.     Exhaustion

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.  "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel."  *Rockwell v. Yukins*, 217 F.3d 421, 423-24 (6th Cir. 2000).

Petitioner previously filed a habeas action in this Court.  On August 22, 2019, the Court dismissed the petition because Petitioner's claims were unexhausted.  *Bluhm v. Rewerts*, No. 1:19-cv-625 (W.D. Mich. Aug. 22, 2019) (ECF Nos. 3-5).  In its opinion dismissing the petition, the Court instructed Petitioner that in order to fully exhaust his claims, he must present them to all

levels of the Michigan courts, including the Michigan Supreme Court. Petitioner returned to the trial court to exhaust his claims, and he subsequently sought leave to appeal to the Michigan Court of Appeals. He did not, however, present those claims to the Michigan Supreme Court by filing an application for leave to appeal. Petitioner therefore has failed to exhaust his claims.

Although Petitioner's claims remain unexhausted, this Court retains the authority to deny habeas petitions, notwithstanding the lack of exhaustion. *See* 28 U.S.C. § 2254(b)(2). Because Petitioner's claims lack merit, the Court will address Petitioner's grounds for habeas relief, despite the fact that Petitioner has failed to exhaust his available state-court remedies.

### III.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## IV.    Ground I:  Actual Innocence

In his first ground for relief, Petitioner argues that he is actually innocent of the offense of CSC III.  Specifically, he contends that he was improperly adjudged guilty of the charge of CSC III, under Mich. Comp. Laws § 750.520d(1)(b), which required the use of force or coercion, because he did not admit to facts that supported a finding of force or coercion.  He argues that, at the plea hearing, he denied that he had committed rape, admitting only that the victim was too drunk to consent to oral sexual penetration.  He argues that additional evidence, which he did not receive until after he had entered his plea, demonstrates that he is actually innocent of the charged offense.[2]

Petitioner's claim of actual innocence fails to state a violation of clearly established federal law.  In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated:  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  But the *Herrera* Court did not close the door completely, stating in dicta: "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if

---

[2] The Court notes that Petitioner's plea testimony alone would have supported his conviction for CSC III, under a different subsection, which provides that "[a] person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and . . . [t]he actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless."  Mich. Comp. Laws § 750.520d(1)(c).

there were no state avenue open to process such a claim." *Id.* at 417.  Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.*  The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).  "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition.  *Schlup*, 513 U.S. at 317.  The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404).  Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural

obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free- standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Cress*, 484 F.3d at 854 (citing cases).

Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious—that this is not, in fact, a capital case."). For both reasons, Petitioner cannot obtain habeas corpus relief on his freestanding claim of actual innocence.

Moreover, to the extent that Petitioner argues that the plea colloquy failed to provide a factual basis supporting a conviction for CSC III under Mich. Comp. Laws § 750.520d(1)(b), which requires the use of force or coercion, his claim is not cognizable on habeas review. The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis, as Michigan has done in Michigan Court Rule 6.610(E)(1)(a), the federal Constitution does not mandate that they do so. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152

11

(3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc), *implicitly overruled on other grounds by Custis v. United States*, 511 U.S. 485 (1994).

For these reasons, Petitioner's first habeas ground, concerning his actual innocence and the lack of a factual basis for his plea, fail to demonstrate that the state-court's denial of his claim was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## V.   Ground IV:  Brady Violation

In his fourth habeas ground, Petitioner argues that the prosecutor failed to provide him exculpatory or impeachment evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does

not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged Brady evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

The Allegan County Circuit Court rejected Petitioner's claim of a *Brady* violation in its order denying Petitioner's motion for relief from judgment:

> Defendant's claim (III) regarding potential Brady Violations are denied pursuant to MCR 6.504(B)(2). Although Defendant alleges a Brady Violation, he states no allegation of the Prosecution suppressing evidence. To the contrary, he attaches to his motion a Proof of Service showing that the Prosecuting Attorney sent Supplement 5 to Defendant's attorney on October 21, 2015. Several Proof[]s of Service in the court's file show that numerous reports and items of evidence were sent to Defendant's attorney in 2015. Defendant seems to claim his attorney hid information and reports from him, but this is not a Brady Violation.
>
> If Defendant's attorney hid information from him, this could be grounds for a claim of ineffective assistance of counsel, however, the letter sent by his attorney to Defendant on February 3, 2016 states that the attorney has "re-sent" all reports, not that they were being sent for the first time. Further, Defendant has already filed an appeal based on MCR 6.508(D)(2) and (3), as they either have or could have been raised in the prior appeal.
>
> Additionally, Defendant mischaracterizes some evidence in his argument. Defendant states that the victim in this case said she never had sex with Mr. Bluhm, referring to a police report from a second interview with the victim. However, Defendant neglects to give context to the statement. The report indicates that the victim states[,] "Robert Bluhm had placed his fingers as well as his mouth on her vagina and that they did not have sex." It appears that the victim's statement was referring to a lack of sexual intercourse (penile/vaginal), not the lack of any sexual conduct.

(Mar. 11, 2019, Allegan Cty. Cir. Ct. Order, ECF No. 1-1, PageID.126-127.)

The state court's factual determinations are presumed to be correct, and Petitioner bears the burden of overcoming those determinations by clear and convincing evidence. 28 U.S.C.

§ 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429.  Petitioner makes no attempt to overcome the trial court's factual determinations; he merely attaches the same documents to his habeas petition, in the hopes that this Court will read them differently.  He thus fails to carry his burden of overcoming the court's factual findings by clear and convincing evidence.

Moreover, the Court finds no error in the trial court's summation of the supplemental police report (ECF No. 1-1, PageID.89-90) and the letter from defense counsel. (ECF No. 1-1, PageID.86.)  The February 3, 2016 letter from Petitioner's attorney—which Petitioner relies on for his argument that he did not receive the police report until after he entered his plea—completely undermines his claim.  The letter states:

> Enclosed you will find copies of the original police report and all supplemental reports for the above-mentioned case.  There are 6 supplemental reports in total.  I have marked each report with a red pen, so you can clearly see the order in which we received these reports.  Your family informed our office that you may not have received one of the reports (I believe it was Supplement 5).  We have re-sent all reports to clarify and misunderstanding and ensure you have received all information regarding your case.

(Attorney Letter, ECF No. 1-1, PageID.86.)  Thus, the letter indicates that the attorney had received information from Petitioner's family that he had never received one of the police reports that the attorney had previously mailed him.  In an abundance of caution, the attorney's office resent all of the previously mailed police reports.  Nothing in the attorney's letter indicates that the prosecutor had failed to produce the police reports.  Moreover, Petitioner also attaches to his petition a copy of the prosecutor's proof of service of supplemental police report #5, indicating that the prosecutor mailed the alleged *Brady* material to defense counsel on October 21, 2015.  (Proof of Service, ECF No. 1-1, PageID.88.)

Thus, it is apparent that, as the trial court held, Petitioner has failed to demonstrate that the prosecution withheld information.  As a result, Petitioner fails to meet the second step of

14

the *Brady* standard.  The trial court's disposition of Petitioner's *Brady* claim therefore constituted an entirely reasonable application of clearly established Supreme Court precedent.

## VI.    Grounds II & III:  Voluntariness of the Plea

In his second and third habeas grounds, Petitioner raises a variety of challenges to the voluntariness of his plea.  Petitioner's arguments under the two grounds are discussed in tandem and are intertwined, and most depend on his earlier argument that the plea hearing failed to establish a factual basis for the plea.

In Ground II, Petitioner argues that trial counsel was ineffective in advising him about the nature of the risks he faced going to trial, the likelihood of prevailing at trial, and the sentence he faced by pleading guilty to CSC III, thereby rendering his plea involuntary.  Petitioner also argues that his appellate attorney was ineffective in refusing to move to withdraw the plea.  In Ground III, Petitioner argues that his plea was involuntary, as he is innocent of the offense, he believed that he faced only a two-year sentence, he only had 15 minutes to review the presentence report with his attorney, and his plea was illusory.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Petitioner's claims do not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and

15

voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.  While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists.  *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a constitutionally valid guilty plea, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e.,

not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary

and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Petitioner has attached a copy of the transcript of the plea hearing transcript to his petition. (Plea Tr., ECF No. 1-1, PageID.47-56.) At the plea hearing, which was held on January 6, 2016, the prosecutor expressly stated that he was bench-filing an amended information, which an amended Count II, changing the CSC-III charge from a 2-year offense to a 15-year offense. (Plea Tr., ECF No. 1-1, PageID.47-48.) The prosecutor recited the plea agreement, as follows:

> [PROSECUTOR]: Your Honor, on December 4th I believe we agreed that the defendant would plead guilty to Count 2 criminal sexual conduct in the 3rd degree and actually which is a 15 year felony and at sentencing the remaining counts and the habitual offender would be dismissed and it's our understanding that his bond would be revoked today.
>
> [DEFENSE COUNSEL]: That's correct your Honor.
>
> THE COURT: Ok, now Mr. [defense counsel] can I rely on the fact that you've discussed with Mr. Bluhm his rights and how he can exercise them?
>
> [DEFENSE COUNSEL]: Absolutely.
>
> THE COURT: And you've discussed the substance of the charge and you think he has a good working knowledge of what the prosecutor would have to prove before a jury if he chose a jury trial and that jury trial went forward?
>
> [DEFENSE COUNSEL]: Absolutely your Honor and we've also discussed, he's prepared—he understood that bond was going to be revoked today.
>
> THE COURT: Ok, good, then I want you under oath Mr. Bluhm, I have some important questions for you. Would you raise your right hand please and take the oath from Mrs. Meade.

RECORDER:  Do you solemnly swear or affirm that the testimony you are about to give in this matter will be the truth, the whole truth and nothing but the truth so help you God?

[PETITIONER]:  Yes, I do.

THE COURT:  Mr. Bluhm, have you had a full and fair opportunity to discuss with [defense counsel] what your rights are and how you can exercise them and do you think you have a good working knowledge of what a jury trial would be like, what your role, your attorney's role, the prosecutor's role and my role would be in such a proceeding?

[PETITIONER]:  Yes, I do your Honor.

THE COURT:  Alright, have you reviewed and signed an advice of rights form?

[PETITIONER]:  Yes, I have your Honor.

* * *

THE COURT:  Ok, are you aware that if you plead guilty today and the Court accepts your plea, you will be sentenced subject to sentencing laws that provide a maximum possible punishment for criminal sexual conduct in the 3rd degree of 15 years of incarceration with mandatory DNA samples to be collected and preserved and mandatory AIDS and STD testing?

[PETITIONER]:  Yes, I do your Honor.

THE COURT:  Ok, you've reviewed this advice of rights form and you think you have a sound working knowledge of what these rights mean and how to exercise them?

[PETITIONER]:  Yes, I do your Honor.

THE COURT:  And when you signed this form and put today's date on it did you understand that I'm going to accept this form, if I do, if I find that it's voluntarily engaged in, as an expression of your desire to waive these rights to a jury trial and the right to cross examine witnesses, the right to appear at the trial and present other evidence and witnesses, etcetera, and you're waiving those rights to a jury trial?

[PETITIONER]:  Yes, I am your Honor.

THE COURT:  Ok, were you in Salem Township of Allegan County on or about September 28, 2015?

[PETITIONER]:  Yes, I was.

THE COURT:  Did you have some contact with Bethany Marie Wood?

[PETITIONER]:  Yes, I did your Honor.

THE COURT:  Would you describe what you did on that occasion?

[PETITIONER]:  Me and Bethany, we were out drinking, ended up going back to my house we were drunk, she ended up getting naked on my bed, I had oral sex with her and now I look back I regret it.  I—she was too drunk to give consent.

THE COURT:  Ok, and there was sexual penetration involved in that offense.

[PETITIONER]:  Ya, it was oral sex so, yes.

THE COURT:  Ok, has anybody used any force or threats, coercions or duress against you to convince you to plead guilty today?

[PETITIONER]:  No, they have not, your Honor.

THE COURT:  Has anybody made any promises or commitments or given you any reason to expect a specific sentence for this crime?

[PETITIONER]:  No, they have not your Honor.

THE COURT:  Has anybody promised you money or property or promised to do something helpful for you, a family member or friend in order to persuade you to plead guilty today?

[PETITIONER]:  No, they have not your Honor.

THE COURT:  Ok, Mr. [defense counsel], my view is that the defendant's plea is knowing, voluntary, and intelligent and has a sound factual basis.  Do you dissent in any way?

[DEFENSE COUNSEL]:  No, your Honor.

THE COURT:  Mr. [prosecutor].

[PROSECUTOR]:  Your Honor, we do agree with one caveat, criminal jury instruction 20.12, criminal sexual conduct in the 3rd degree indicates that first the defendant engaged in sexual act, I think we—there's no doubt about that but just to confirm that oral sex does mean under 2A, entry into her genital opening by the defendant's tongue.

THE COURT:  Any dispute about the entry in the genital opening, Mr. Bluhm?

[PETITIONER]:  No, there is not your Honor.

20

THE COURT:  Mr. [defense counsel]?

[DEFENSE COUNSEL]:  No, your Honor.

THE COURT:  Are you satisfied Mr. [prosecutor]?

[PROSECUTOR]:  We are your Honor, thank you.

THE COURT:  And you think the Court has otherwise complied with the applicable Court Rule concerning taking pleas in criminal matters?

[PROSECUTOR]:  Yes.

THE COURT:  The Court finds that the defendant's plea is knowingly, voluntarily and intelligently made in the presence of counsel and with counsel['s] assistance to him to understand his rights and how to exercise them.  The Court finds his plea is not the product of any force, threats, coercion or duress exercised toward him nor is there any other improper inducement or motivation for the plea.

I further find that the plea has a sound factual basis in the defendant's allocution of the fac[ts] today and that factual basis is sufficient to convince any rational decision maker including a member of a jury that he did in fact violated the statutes as alleged in Count 2.

For those reasons the Court accepts the defendant's plea and finds him guilty of criminal sexual conduct in the 3rd degree by force or coercion and involving sexual penetration occurring on or about September 28, 2015 in Salem Township concerning the named complaining witness, now victim.

(*Id.*, PageID.50-54.)

The trial court expressly found that, based on Petitioner's responses, the plea was voluntarily, knowingly, and intelligently made.  That determination is presumptively correct, and Petitioner bears a heavy burden of overcoming the finding.  *Garcia*, 991 F.2d at 328.

Petitioner first argues that he did not understand that the offense to which he pleaded carried a 15-year maximum sentence.  However, as the transcript of the plea hearing makes clear, Petitioner was squarely advised, both by the prosecutor and the court, that the information had been amended and that the offense to which he proposed to plead guilty carried a maximum sentence of 15 years.  Petitioner expressly agreed, under oath, that he understood the terms of his plea.  Under settled Sixth Circuit authority, a defendant is bound by his statements given under

oath at the plea hearing.  *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [under Rule 11 of the Federal Rules of Criminal Procedure], 'the defendant is bound by his statements in response to that court's inquiry.'") (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).  Petitioner therefore may not now obtain relief based on his contrary statement.

Petitioner next argues that defense counsel coerced him into pleading guilty, by threatening him with a life sentence if he did not.  Again, however, Petitioner's argument is foreclosed by his sworn statements at the plea hearing.  When asked if he had been threatened or coerced into entering his plea, Petitioner averred that he had not been.  (Plea Tr., ECF No. 1-1, PageID.52.)  Petitioner may not now dispute his own sworn statement.  "To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless."  *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992).

Petitioner next argues that the plea was illusory.  If a prosecutor's promise is illusory, then a plea is involuntary and unknowing.  *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000).  However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences.  *Mabry v. Johnson*, 467 U.S. 504, 511 (1984); *see also McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004) (where a defendant receives the "bargained for benefit" the plea is not illusory and he is not entitled to habeas relief).

Here, Petitioner's plea was far from illusory.  In exchange for the entry of his plea, he was promised that the other two pending offenses—assault with intent to commit sexual penetration and assault to do great bodily harm less than murder—would be dismissed, as would the sentencing enhancement for being a third-offense habitual offender.  Consistent with the

agreement, the court dismissed the charges and the enhancement after imposing sentence on the CSC-III conviction.  (Sentencing Tr., ECF No. 1-1, PageID.48; Jan. 6, 2016, Allegan Cty. Cir. Ct. Order, ECF No. 1-1, PageID.57.)  Moreover, the sentencing enhancement alone exposed Petitioner to the risk of a sentence twice that of that he faced by pleading guilty.  *See* Mich. Comp. Laws § 769.11(1)(a).

Further, to the extent that Petitioner now complains that, prior to the plea hearing, he did not receive a police report or the laboratory report showing that the victim had a blood alcohol content of .17, his claim is both unsupported, as previously discussed, and barred by his acceptance of the plea.[3]  As the Court earlier indicated, a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett*, 411 U.S. at 267.  Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 56 569 (1989); *Tollett*, 411 U.S. at 267.  By entering his plea, Petitioner waived any claim that, had he continued to plead not guilty and subsequently come into possession of additional evidence, he would have made a different decision.

Finally, Petitioner cannot demonstrate that he received ineffective assistance of trial or appellate counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

---

[3] As earlier discussed, Petitioner fails to demonstrate that he did not received the police reports from either the prosecution or his attorney before he decided to enter the plea.  Petitioner's new allegation that he did not receive the report on the victim's blood alcohol content before he entered his plea is belied by his own statements at the plea hearing that he was aware at the time of the plea that "she was too drunk to give consent."  (Plea Tr., ECF No. 1-1, PageID.51.)

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner utterly fails to demonstrate that, in recommending the plea agreement, trial counsel was ineffective. As discussed, by negotiating the plea, counsel obtained a substantial benefit for his client, who not only faced the prospect of an enhanced sentence as a habitual offender, but also faced the risk of being convicted on the other charged offenses. In addition, the

victim's statement of what happened—that Petitioner prevented her from leaving and repeatedly abused her—exposed Petitioner to the risk of additional charges for unlawful imprisonment and/or kidnaping and a revised habitual offender notice for fourth-offense felony offender. (*See* Letter from Appellate Counsel, ECF No. 1-1, PageID.82.) Counsel's advice to take the plea was well within the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Petitioner therefore fails to overcome the presumption of effective assistance of counsel.

With respect to appellate counsel's performance, Petitioner's argument approaches frivolousness. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Here, as discussed, all of the claims presented in Petitioner's habeas application lack merit. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004)

(where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).  Appellate counsel therefore did not provide ineffective assistance in declining to raise them on appeal.

Moreover, to the extent that Petitioner argues that appellate counsel was ineffective when she refused to file a motion to withdraw the plea, his argument is wholly unsupported by the record.  Indeed, the letter from appellate counsel upon which Petitioner relies to support his claim definitively disproves that claim.  In her letter, appellate counsel advised Petitioner of his options respecting strategies on appeal.  One of the stated options was the possibility of moving to withdraw the plea.  Appellate counsel detailed the option at length, describing the potential benefits and risks Petitioner faced in selecting the option.  The option was one of three discussed in counsel's letter, and counsel expressly advised Petitioner both of her opinion and of the fact that the ultimate decision was his.  Rather than indicating counsel was ineffective, the cited letter documents counsel's reasonable performance of her duties.

For all these reasons, Petitioner fails to demonstrate that the state courts' decisions denying Petitioner's habeas grounds II and III were either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  He therefore is not entitled to habeas relief on those grounds.

## VII.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine

26

whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   April 28, 2020                                          /s/ Janet T. Neff
                                                                                  Janet T. Neff
                                                                                  United States District Judge